All right, the world first World fuel trade services training May it please the court. Good morning. My name is Steve Stancliffe I represent the claimant below and the appellant in this action the ship owner Hebei Prince Shipping Company Limited. They are the owner of the vessel the motor vessel Hebei Xishuang and hereafter I'd hope to call it the ship or the vessel. Thank you. The the vessel is a Hong Kong flagged ship. The facts arise from a bunkering that took place in Khorfakan in the port of Khorfakan in the United Arab Emirates. The parties to the contract conducted negotiations about the bunkering in Greece so the you think that it's clear that the contract was formed under Greece law and that it was breached under Greek law. We respectfully request that the decision of the district court be overruled and that the action be dismissed or that judgment be entered or in any case that the case be remanded for trial on disputed issues. There are many issues that were briefed. I'm very concerned that we won't be able to touch on all of them but I do have some preliminary thoughts that I would like to share. First, it's intensely important that we keep track of who the parties are because there's a lot of discussion of the parties to the bunkering contract and in this case the parties were not the parties that's before you. That is not the ship owner but the the charterer who chartered the vessel from the ship owner. Yes your honor and I think a lot of the cases conflate that. Oh I think there's confusion just by virtue of the number of entities that are involved. I don't think so your honor. I think that it's to our advantage that the court clearly understand the relationships that are afoot and what I wanted to mention only was that many of the cases talk about the parties to the bunkering contract and in this case I just want to emphasize that the parties are the not the owner who's before you. So the second thing is that there's really no serious dispute but that unless U.S. statutory law applies that no lien would arise and the remedy would not be available to the plaintiff in this case. There's also no serious dispute that if the statutory law of the United States were not to apply that there would be no remedy. The only possible basis for the existence of a maritime lien is if the court accepts that there is a maritime lien under the Federal Maritime Liens Act, an animal of statute, which superseded the general maritime laws of the United States as they existed when the act was first enacted in 1910 and then later amended in the balance between the ship owners rights and the material men or suppliers rights. So I think it's also important to bear in mind that there has been much change in the way international shipping commerce is accomplished from the time the Valencia and the Kate were decided in the 1880s and where we are today with facts arising in 2012 and 13. Fundamentally the communications that were available at the time when maritime liens were first, when the law and that was first jelled by the Supreme Court in the Kate and the Valencia, it was very challenging for material and suppliers to interact with ship owners or to even know who they were. But in today's age when we have satellite communications, access to the Internet, vast amounts of information that are available, there's a fundamentally different dynamic. I'm not arguing that we should change the statute because we argue that the statute does not apply for a number of reasons. Why don't you give us your two or three best arguments? Thank you, Your Honor. I do want to say that there are there are a number of facts, material facts that are in dispute and that if and and that summary judgment was improper in that regard. One of the one of the things about the number of entities involved is that World Fuel Services and the network of affiliated companies, Your Honor, in my perspective would be the one that was playing the shell game here in terms of creating confusion. The plaintiff in this case is identified as World Fuel Services Trading DMCC, a DBA division of Bunker Fuels. So you say, I take it to kind of speed things up, the confirmation of the fuel order where it says WFS Trading DMCC, you say that's not the same entity that's the plaintiff here? That's correct, Your Honor. And while we in a briefing use the shorthand of WFS, we think that if the plaintiff in the technicalities of statutory law and the way it got there, that that's that's not unfair. Your Honor, there are a host of issues that are problematic about. Earlier decision in the Triton Marine case said that the party in the bunker confirmation is the contracting party. Just as a matter of law, that's even if the charter and negotiated or communicated with someone else. And I thought that that statement in Triton was made to avoid the very kind of argument that we're having now. I understand, Your Honor. And in response to the argument on based on Triton Marine, you responded, well, you should overrule Triton, which we have no authority to do. It's our own precedent. And it seems to be well-reasoned because I don't understand why, you know, the certainty, I mean, obviously there are going to be potentially a number of consortiums of fuel suppliers who work through different agents and deal with with ships and charters in different companies. So there are a lot of different players in these kind of transactions. And Triton Marine says, okay, let's try to find a way to straighten it out. And so we're going to look at the contracting party. And, you know, to my simple way of viewing things, DMCC seemed to be the party identified in the bunker confirmation. Even if that's so, Your Honor, DMCC undertook no action in furtherance of the contract. It didn't pay for the bunkers. It didn't contract with APSCO. The bunkers delivered by APSCO were paid for by a different entity, World Fuel Services, Inc. I thought that was the whole point of Triton Marine, is that it was something that, you know, was facially valid and that we weren't free to go behind it. Your Honor, I did not read the Triton case that way. And to think that it's necessary for this court to overrule Triton to find in favor of heavy prints in this case. There are a litany of reasons why this case is much different than the Triton. Number one, the charterer in the Pacific Chukotka case was... I would agree that DMCC is the party identified on the bunker confirmation. Your Honor, the text on the bunker confirmation states WFS trading DMCC DBA division of bunker fuels. Are you making an argument that WFS DMCC is different from World Fuel Services trading DMCC? Are they not the same entities? I'm saying that there's not clarity on the contract that the obligation and that the DMCC undertook no action in furtherance of the contract. You yourself used the WFS abbreviation. I understand, Your Honor. I understand why the court would conclude that. And if we conclude they're the same, wouldn't that bring it within the ambit of our Triton Marine precedent? Your Honor, Triton is different in a number of ways. Number one being that the charterer had its principal place of business in the United States where the charterer in this case did not. The negotiations over the bunker contract took place in the United States. The U.S. choice of law provision in that contract was on the face of the bunker contract and it referenced all particulars of the laws of the United States of America, not as here simply the general maritime laws of the charterer and and sent the invoice to the charterer, unlike here where other entities are doing those things and the evidence that the... I'm trying to get my mind around it and this is you know maybe simplistic on my part, but it vessel got these bunkers and that DMCC was the party who contracted to provide the the bunkers and as far as I can tell DMCC did provide the bunkers and so it provided the fuel and I felt at times as if I was in the middle of some obfuscation that was trying to make in my very simplistic view which is that the party with whom you contracted and the party that provided the fuel or to be paid for the fuel by the party that benefited from the fuel which is either the owner of the chartered vessel or the the or tramp but it's we're talking here about the party before us is the owner of the chartered vessel so it was you know and I may be seeing this far too simplistically I'm willing to admit but I've always just had the notion that if somebody paid for some if somebody supplied something and somebody else benefited from the supply of something that the person who supplied it ought to be paid unless the product was defective or there's a dispute about rates or whatever I mean so I come down at the clearly they should be the question is who should pay and what in fairness is the right party to pay that bill and in this case it should be the charter but we were denied the opportunity to evaluate or to know the risk as as the World Fuel Services organization evaluated and understood to be a set forth in the sealed supplement sealed appendix I would urge you to take a look at the credit application and review where they have detailed knowledge of where's the Charter the Charter is now defunct your honor this I think this arrest but the nail in its coffin wouldn't you be the logical person if the Charter is defunct your honor the question is in fairness whether a maritime lien arises that gives rise to the in rem remedy that's been sought and I don't think that there's any dispute but that the people who provided the whether who should pay and in fairness whether that should be the DMCC provided the fuel your honor provider of fuel is a very specific term of art and our argument so it's clear is that they were not the provider their involvement is too attenuated for them to qualify as the provider of the fuel not anyone whose name is on a contract can be qualified as the provider and that's that's not an overly technical position it's just that DMCC didn't do anything well let's for your time runs out let's just assume purposes of argument the MCC they provided the fuel they haven't been paid you win the Charter are going to have to duke it out if you get stuck with the money but with Owen paying the money so tell us now succinctly why the maritime lien doesn't apply the maritime lien does not apply because the text of the terms and conditions that that DMCC attempts to incorporate do not call for the application of the statutory laws of the United States unlike all the other cases unlike Triton unlike trans tech unlike all the other bunker contracts which expressly provide for the entirety of us law including the statutory law the the general maritime law is a separate and distinct body of law a source of law which has to be respected as the judge made law and rules applying to the Admiralty as opposed to the laws of the state of Florida also incorporate the general maritime law of the United States your honor I see my time is up I may continue no there's no in rem remedy available under the laws of the state of Florida that's a fundamental premise I think that what they failed to do explicitly they can't but judge Harrison I'll ask you a question that I think has a yes-or-no answer the laws of the state of Florida incorporate the laws of the United States as a matter of law either they do or they don't your honor I do not believe that that's the case in this regard okay overly overly thank you your honor which is a coberly coberly yes your honor I please the court my name is mark curberley I'm here on behalf of the plaintiff Appley world fuel services trading DMCC there was a discussion initially about the Triton marine case and your honor is on point and that that is the precedent that is controlling and for that reason it would make sense to look at that very briefly to see what exactly is the same because the parallels are remarkable that case involved a foreign vessel a Russian vessel this case involves a foreign vessel a Chinese vessel that case involved bunkering in foreign location Odessa this case involved bunkering in a foreign location location for core for con in the United Arab Emirates I'm just for my education I'm assuming bunkering in the maritime context made sure you're given gas to a ship that's correct you're usually fuel oil diesel or heavy oil yes your honor the bunker supplier in each case was foreign in that case it was a Panamanian bunker supplier in this case it was a United Arab Emirates bunker supplier in both cases the Charterers were foreign in that case the Charterer in this case it was a Greek Charterer both cases the bunkers were originally placed through a foreign broker an affiliate of the bunker supplier in that case it was a Canadian broker Triton marine fuels Canada in this case it was a Singapore broker with a Greek office which was world fuel services Singapore and their local affiliate was called bunker fuels Hellas so throughout the establishment of the arrangement we have the same type of foreign parties involved and foreign contacts involved both cases involved a bunker delivery confirmation that was sent after the contract was made and was sent from the broker to the Charterer and in both cases they incorporated US law in the Triton case incorporated US law in the bunker confirmation in our case it incorporated the terms and conditions of the world fuel services companies which included the US choice of law provision and that's how we ended up looking at the formation of the contract in our case that is a difference and it was looked at both under Greek law and US law and both would allow incorporation by reference to a website such as in this case the Greek case that was cited to the court by our expert Anastasios I'm sorry Paris Karameet see us I believe is his name was a case decided in 2014 and it was even more on point and stronger than a US case we could find it was a bunker case in that particular case it was a Danish supplier and they were allowed to incorporate by reference their Danish terms and conditions in this bunker supply that took place and again that court in Greece said that can be done joined as a defendant hello tramp is insolvent they went out of business your honor and and the other reason is that we have a maritime lien on the vessel and therefore the vessel was in this jurisdiction and we had maritime jurisdiction over the vessel yes your honor demand was made upon them they did not pay and of course that's how we ended up putting a lien on the vessel this bunkering operation took place in October of 2012 and demand was made for them to pay which they did not bills were sent and ultimately the vessel was arrested in April 2013 about six months later in the United States in fact the lien is on the vessel not on the owner and that's why we don't have to care whether or not the owner was a party to this contract because the Charter has authority under the law and is deemed to have authority to put a lien on the vessel and to contract for services and necessaries for the operation of the vessel since they are the ones who are in fact causing the vessel to move from yes yes your honor our claim was against the vessel in rim and the owner showed up as a claimant claiming the vessel and the only assets to pay this judgment are the assets were paid into the court regardless of how much more interest or cost there may be it's limited to the assets that were put into court representing the value of the vessel you were talking about Greek law but just unclear on this threshold choice of law question should general ministered on the United States maritime law principles or Greek law apply to the question of whether the choice of law provision in the contract governs you think that should be governed by United States maritime law principles right not yes correct the only way Greek law enters into this discussion at all is because there was the issue of contract formation here in that the US law choice of law provision was contained in the terms and conditions on the website and it was incorporated by reference as opposed to being and the bunker confirmation itself any different exactly exactly once it's determined that either under Greek law or US law that those terms and conditions are incorporated then US law controls this transaction yes your honor yes your honor because the burden is on the claim it's come forward and show that foreign law applies and that the foreign law is different if the foreign law is not different this court can apply US law judge Davis was being careful and saying well either way whether we look at Greek law or US law it appears to be the same and just say the law we're different I mean then what law do you say applies I totally understand what you're saying it doesn't make any difference in this case we don't have to do a choice of law analysis at the front end but what if we did I miss I thought you were arguing that if we did if the law were different then u.s. what we would argue that the choice of law provision yes well Triton contained the choice of law provision in the and you think that makes a difference you agree that that in terms of identifying the formation of the contract I recognize that that's a difference and that's why I went the difference is that it was not actually in the bunker confirmation that's the only difference it was the bunker confirmation difference though to the sort of threshold choice of law question whether the question is about incorporation or about some other issue of contract yes your honor and I hate wasting time on so I'm sorry because I honestly don't as you said I don't believe it makes a difference whether this court looks at Greek law based upon the law that's been presented to this court in recent decisions as judge Davis did or concludes that it's the same as US law and that either way the result is the same those terms and conditions can be incorporated by reference from a approach that will since the parties are both briefing this issue and since we don't see I think he said strongly object to the application of recall and that's why he went through that analysis but this court could easily conclude the only US law is necessary to look at going for a moment to the issue of the general maritime law which was discussed and argued here our position is and I look at that choice of law clause and say oh we can only look at the general maritime law we can't consider the statutes of the United States and as your honor pointed out all state law includes all the statutes and the Constitution and treaties of the United States that goes back to the Hallenstein case in 1879 where the court stated that the Constitution laws and treaties of the United States are as much a part of the law of every state as its own Constitution and laws yes it has to judge Davis came to that conclusion which of course isn't binding on this court but the reason it has to is because this court cannot simply look at the general maritime law if you look at the history of the general maritime law that term was not capitalized and still often is not capitalized when this country started there were no cases or laws for the Admiralty courts to apply but there's trade immediately and the Admiralty courts were established with the Constitution and they went to whatever body of law they could find which was in fact general maritime law of other countries usually England because it was in English and that was their tradition and but they would rely on some French law and oftentimes it was customs and usages such as bottom rebonds and things like that which were essentially liens where you give credit to the vessel and until there were statutes that's what the court relied upon and that's how it came to say and it's established its common law of maritime law every Supreme Court case that has addressed the issue says and the one of the first was Butler v. Boston in 1889 the general maritime law is subject to such amendments as Congress may see fit to adopt that was a case that involved a claim under Massachusetts law for a shipwreck on the beach and the court applied the Federal Limitation of Liability Act which had only recently been passed even though it essentially it amended and resolved issues in the general maritime law and a more recent case the Norfolk Shipbuilding and Drydock v. Garris case a Supreme Court case in 2001 stated when a statute resolves an issue we have held that the general maritime law must comply with that rebel resolution and so the general maritime law which is generally and sloppily referred to as just decisions of the court are in fact decisions of the court interpreting statutes as well and there has never been any authority for the position they're taking right now that a choice of law provision that includes only the general maritime law does not include United States statutes in fact we cited about five cases in our brief where district courts were interpreting contracts that contain choice of law provisions that simply provide for the general maritime law and in every case they also looked at United States statutes one of them actually involved the Ship Mortgage Act and even though the general maritime law was the choice of law in that mortgage document the court applied the Ship Mortgage Act for the United States and the statutory law of the United States. Would that eliminate this argument in future cases? It would eliminate this argument in future cases absolutely but I will also point out one other thing since you quoted what it does say it says the general maritime law of the United States if claimant wants to parse words here and say that since it only states the general maritime law of the United States and then go to all these cases I shouldn't say all these are very few that even talk about the definition of what the general maritime law is I should note that those cases don't talk about the general maritime law of the United States and in its origin the general maritime law came from somewhere else we at least say in here the general maritime law of the United States it's very clear we want U.S. law to apply and if I can refer one moment to a case which was talking about incorporation of federal law into states where there are state choice of law provisions there's one that's remarkably close it's a and I did not cite this in my brief so let me mention the site Fidelity Federal Savings and Loan v. Cuesta 458 U.S. 141 1982 it was a case in California dealing with the deed of trust and it was also a situation of foreclosure so it's it's an extraordinary remedy where you can seize property of a debtor and a creditor is taking that action that deed of trust had a due-on-sale clause and also contained a choice of law clause for California law California law prohibited choice I'm sorry a due-on-sale clauses and they were unenforceable in California and that's how that got up to the Supreme Court the Federal Homeowners Loan Act of 1933 permits due-on-sale clauses and the act it applies in your state it would preempt anything in your state in that field and therefore this is the law in your state and it was an extraordinary remedy allowing seizure of property very much like our case there was one other one I wanted to mention Atkinson v. GE credit which I I did put in the brief that was a Georgia case involving a choice of law in the sale of I think a mobile home had an interest rate that violated the Georgia usury laws again contract shows Georgia law to apply well the court found that the deposit institution deregulation and monetary control act which is a federal act would allow a higher interest rate and that would in fact control and that the US statutes are part of Georgia law one interesting fact there was they concluded that it was the intention of the parties that this act would apply because they included the higher interest rate we have that very thing in our choice of law provision and in our terms and conditions paragraph 8 deals with the parties intend that a maritime lien will be put on the vessel the parties intend that the Charter has the authority to put a lien on the vessel so it's very clear if you're going to use the reasoning of that Atkinson court that the parties intended that a lien would be put on the vessel in this case no further questions that would conclude my argument thank you if I may respond to counsel's statement that there's no case laws supporting our position I would point the court to the case of Eagle geophysical which is a footnote 14 it states quote it would be undermined the FMLA to conclude that even in the absence of satisfying the requirements of the FMLA any party who provides a quote necessity to a vessel is entitled to a maritime lien under gender maritime principles so I take big issue with the notion that the general maritime law is conflated and synonymous with the statutes it's absolutely clear that where Congress speaks that trumps and preempts whatever the general maritime law was from whatever time it was created and that's exactly what happened here the the statutes superseded the then existing general maritime law at the time of their enactment in 1910 and then later and its amendment in 1971 so I would urge the court to follow this court's reasoning in the case of Bowman flot which in which the court refused to of the party who had inartfully and through sloppiness had failed to articulate what was that the choice of law provision would provide so as here and as I tried to argue earlier the the plaintiff should not be permitted to bootstrap through a catch-all of Florida law that which it didn't articulately describe in the front end and in fact even if you incorporate the the the Florida law Florida law Florida state law by itself does not allow for an in rem remedy and I don't think any Admiralty practitioner would argue otherwise except in the notion that it would include the remedies that were not specifically called out for already in the terms and conditions there are compelling circumstances here why the the choice of law provision should not be followed and that's what the Bremen case from the Supreme Court was about it's an often forgotten predicate to the to the general rule now that choice of law provisions will be respected and in compelling circumstances include fraud and in this case there was a contract between the ship owner and the charter that forbade him the charter to incur any liens and required to satisfy and required to pay for the fuel other compelling circumstances is all of the credit worthiness for lack of credit worthiness for this particular charter at the time it extended and increased its credit to him to the charter militate in favor of of the the ship owner in this case in this case the ship owner is absolutely innocent of any wrongdoing your honor the ship owner was not a party to any negotiations had no involvement with the with this contract and had no involvement whatsoever the I want to respond also to the notion about contract formation and I think that it would violate the principles of Lawrenson and the United States duties to respect the laws of other nations if we were to automatically assume that a insertion of a particular choice of law clause that was negotiated and concluded in a foreign country would automatically be valid under that law where it was concluded so contrary to Mr. Coberly's argument our retained expert and legal advisor from Greece opined that under the circumstances where the terms and conditions are not on the face of the bunker confirmation under the circumstances where the terms and conditions are not exactly where they're told reported to be that under those that particular choice of law selection notwithstanding the 2014 case that cited which applies strictly to the application of foreign arbitral awards and not this kind of case. As a general matter I understand what you're saying is an equitable matter which is that you're innocent of any fault at all we're faced with a situation where the ship operator who charted the vessel is insolvent and so you're left with an allocation of loss problem between the ship owner and the fuel supplier and as an equitable matter which I realize you I hear you on a contract reformation and the thing but isn't as an equitable matter if we put it all aside shouldn't as to who's going to bear the loss when one when a party that would seem the first one to bear the loss is insolvent why shouldn't it why shouldn't the one that bears the loss be the one that received the benefit of the fuel? Yes exactly your honor the one that should bear the loss in this case is the architect of that loss and that is the plaintiff in the case who had superior knowledge about the ownership of the vessel the credit lack of credit worthiness of the... Can I just ask a question because when you make your equitable argument there's something I don't understand so you're saying that the fuel suppliers bracketing who that is but that the fuel suppliers knew perfectly well that the chartering company had bad credit but isn't that the whole point that under the act they can supply the fuel anyway because they know they can get a lien on the on the ship I thought that was the whole point of allowing the lien in cases like this it would keep the supplies flowing it would keep the boats shipping and people would be willing to extend credit even when it wasn't entirely clear that they otherwise would because they knew they could get the lien so these people relied the fuel suppliers rely on the statutory presumption that they can get the lien that's why they're providing the fuel so why aren't they entitled to come you know execute on the lien now? If I may your honor because in this case number one their their contract doesn't call for the application of the statutes and it very well could have and all of the other cases do and number two is that the the the supplier in this case had all the information so I don't I don't understand what they didn't have was any information saying that about saying that the Charter could not in fact encumber the boat with but they absolutely did on twice prior the bunker fuels helis coordinated bunkers for the ship and on each of those bunker delivery receipts they had a stamp in red ink or blue ink that said we're not authorized to incur a lien on behalf of the owners and oh by the way your honor everybody knows that these charters are existing on New York produce forms and they all prohibit the inclusion of a lien I'll bet you mr. Coberly would tell you that he would advise every one of his clients to include such a provision it's not sure that's responsive to the point judge Harris raised which is that if you start building up obstacles to the imposition of a lien on the ship and on the property you're building in you're building into the system obstructions and of commerce that's I think that's the difficulty that judge little flummoxed and I am apologetic about that but I think the answer is that I think it's true that under American law that's that that's kind of the strategy that American shipping is going to be handled that way and we want to protect the material men and the supplier but that was created in an age when when there was a lack of information and you couldn't pick up the phone you couldn't dial up on the satellite or you couldn't see that this right now or you didn't know who the owner was so it was like a really good argument to send to Congress maybe they want to I understand your honor but it but it does constitute compelling reasons while in this case that would be inequitable to apply the choice of law because of because of all those circumstances and in this case we're jumping to a presumption that only exists under American law and does not exist in the in the majority of other maritime nation states and so it's not as if the supplier has no remedy it just doesn't have an in remedy in REM remedy or right of arrest or a maritime lien remedy in the other jurisdictions where the claims could be brought thank you
judges: J. Harvie Wilkinson III, G. Steven Agee, Pamela A. Harris